UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILL THOMAS,<br><br>               Petitioner,<br><br>v.<br><br>WARDEN,<br><br>               Respondent. | CAUSE NO. 3:18CV10-PPS/MGG |

<u>OPINION AND ORDER</u>

Will Thomas, a prisoner without a lawyer, was found guilty of dealing in a narcotic drug by the Grant Superior Court under cause number 27D01-1404-FA-5. ECF 1. He now seeks habeas corpus relief from that conviction and the imposed 40-year sentence. His sole contention is that the trial court should have excluded from evidence heroin recovered from him after a warrantless arrest following a traffic stop. *Id*. at 4. However, because this Fourth Amendment claim was fully litigated in the state courts it is not cognizable here. Thus, the petition will be denied.

               I.        BACKGROUND

In deciding the petition, I must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Thomas's burden to rebut this presumption with clear and convincing evidence. *Id*. Here are the facts recounted by the Indiana Supreme Court:

> This case arose from an arrest for dealing in narcotic drugs. On April 7, 2014, the Joint Effort Against Narcotics ("JEAN") Team Drug Task Force, which included officers from the City of Marion Police Department and

the Grant County Sheriff's Office, received a tip from a credible confidential informant that two men from Chicago were travelling to Grant County to sell drugs. The informant told JEAN officers that the two men were driving a white minivan with a temporary Illinois license plate and could be found at the Comfort Suites in Marion, Indiana.

Upon receiving this information, Detective Mark Stefanatos ("Detective Stefanatos") began surveillance of a Dodge Caravan that fit the confidential informant's description. While there, he observed two men, later identified as Will Thomas and Byron Christmas, enter the vehicle and drive away.

Detective Stefanatos followed the van and observed it illegally change lanes without properly signaling. Detective Stefanatos then called for a uniformed police officer, Joseph Martin ("Officer Martin"), to initiate a traffic stop. He also called for a canine unit on the scene, which arrived within a minute or two.

Officer Martin initiated the stop and approached the vehicle with Detective Stefanatos. Officer Martin walked to the driver's side of the vehicle and spoke with Christmas while Detective Stefanatos spoke with Thomas, who was sitting in the front passenger seat. The officers tried to verify each man's identity and their reason for travelling through Marion, Indiana. Both Thomas and Christmas told officers that they were visiting family, but neither man could identify where in Indiana their respective family members lived. Furthermore, the driver, Christmas, was unable to present officers with any form of identification and claimed he left his driver's license in Chicago.

Simultaneous to the traffic stop, officers ran a certified narcotics canine around the vehicle with the occupants still inside. The officers first brought the canine to the vehicle's rear bumper and had it sniff along the driver's side. When the canine reached the driver's door, it alerted officers to the presence of narcotics. Officers removed Thomas and Christmas from the vehicle and conducted a pat-down search for officer safety. No drugs or weapons were found in the course of the pat-down.

Christmas then gave officers permission to search the vehicle. The canine was brought into the vehicle's interior, but it no longer detected the presence of narcotics. No narcotics or contraband were found in a subsequent search of the vehicle's interior. Officers did not bring the narcotics detection canine around the suspects because the canine was also trained as an apprehension dog. Bringing the dog around the

> suspects ran the risk of causing them injury if either of the suspects turned out to possess contraband.
>
> Christmas and Thomas were each asked whether they would consent to a strip search at the police station. Christmas agreed and was transported to the county jail where no drugs were found on his person. Officers did, however, find Christmas had $750 in cash. Thomas, on the other hand, declined the search. Given Thomas's refusal to consent, officers applied for a search warrant. In the meantime, they transported Thomas to the Marion Police Station where he would await the results of the search warrant request. Officers said they transported Thomas because they preferred to conduct the search somewhere other than a public roadway. They also expressed concern about the destruction of evidence if Thomas were not transported to the police station.
>
> Upon arrival at the station, Thomas was placed in an interview room, which was equipped with video monitoring equipment. Officers left Thomas alone in the room and continued to observe him remotely. Moments later, Thomas was seen removing something from his jacket pocket and placing it in his mouth. Officers re-entered the room to retrieve what Thomas had placed in his mouth. When Thomas refused to comply, officers forced his mouth open and retrieved a small plastic baggie containing 8.5 grams of a gray, crumbly, rock-like substance. The substance later tested positive for heroin.
>
> Thomas was charged with Class A felony dealing in a narcotic drug and Class B misdemeanor battery. Prior to trial, Thomas moved to suppress evidence recovered at the police station, alleging officers lacked probable cause to detain him. The trial court denied Thomas's motion. After a two-day jury trial, Thomas was found guilty of dealing in a narcotic drug, but not guilty of battery.

*Thomas v. State*, No. 27D01–1404–FA–5, slip op. 2-3 (Ind.S.Ct. Sept. 7, 2017) (internal citations omitted); DE 6-10 at 2-3.

Thomas appealed his conviction, raising a single issue: whether the trial court erred in admitting the heroin into evidence under the Fourth Amendment. ECF 6-4; 6-6. The Indiana Court of Appeals agreed with Thomas and reversed his conviction. ECF 6-6 at 15. The State sought transfer and the Indiana Supreme Court agreed to accept

3

jurisdiction over the case. ECF 6-10. In an eleven-page opinion, the Indiana Supreme Court reversed course. It found the admission of the heroin did not violate Thomas's Fourth Amendment rights. *Id*. at 10-11. Thus, it affirmed the trial court's decision to admit the evidence and reinstated Thomas's conviction. *Id*. at 11.

Thomas filed a habeas petition raising the same claim that has flip-flopped throughout the state courts. In it, he asks me to find that the Indiana Supreme Court erred and grant him habeas relief.

II. ANALYSIS

Thomas's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant U.S. Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from U.S. Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). As the Seventh Circuit has observed, "[t]he AEDPA standard is deliberately difficult, setting a high bar for relief." *Adorno v. Melvin*, 876 F.3d 917, 921 (7th Cir. 2017). The §2254(d) standards generally make habeas relief tough to obtain, but the standards are even more stringent for Fourth Amendment claims about the suppression of evidence, which is the type of claim Thomas makes here.

As the Respondent correctly points out, the Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). This is because the exclusionary rule, which requires the suppression of evidence obtained in violation of the Fourth Amendment, is not a "personal constitutional right" of the accused; rather,

5

"it is a judicially created means of effectuating the rights secured by the Fourth Amendment." *Brock v. United States*, 573 F.3d 497, 499 (7th Cir. 2009). Therefore, federal habeas courts are barred from reviewing free-standing Fourth Amendment claims that were fully and fairly litigated in state court. *Id.* at 494-95; *Monroe v. Davis*, 712 F.3d 1106 (7th Cir. 2013); *see also Ben-Yisrayl v. Buss*, 540 F.3d 542, 552 (7th Cir. 2008) ("As long as a habeas petitioner enjoyed an opportunity for full and fair litigation of a Fourth Amendment claim in state court, federal habeas review of the claim is barred.").

Thomas's claim is premised on a violation of his Fourth Amendment rights, the same issue he litigated in the state trial court, the Indiana Court of Appeals, and the Indiana Supreme Court. He argues that the heroin recovered from his person should have been excluded from his trial. Thomas believes that the Indiana Supreme Court got it wrong and because of that seeks habeas relief. The Respondent argues that this claim is not cognizable in this proceeding. A review of the state proceedings demonstrates that Thomas had a full and fair opportunity to litigate his Fourth Amendment claim. Indeed, this exact claim was litigated in three different State court venues.

First, Thomas raised his Fourth Amendment claim in a pretrial motion to suppress. ECF 12-1 at 7-12. The trial court held an evidentiary hearing, ECF 6-1 at 8, and ultimately denied the motion to suppress. ECF 12-1 at 13-16. After his conviction, Thomas appealed to the Indiana Court of Appeals, arguing that the trial court erred when it denied his motion to suppress. ECF 6-4 at 4. This was the only claim Thomas raised on appeal. *Id*. The court of appeals issued a 15-page opinion thoroughly analyzing the facts and looking to applicable Fourth Amendment case law to resolve his

claim. *See Thomas v. State*, No. 27A02-1602-CR-374, slip op. at 6-15. Unhappy with the court of appeals' decision, the State then raised that issue with the Indiana Supreme Court. ECF 6-7 at 2. The Indiana Supreme Court parted ways with the court of appeals on this issue and penned an 11-page opinion affirming the trial court's decision to admit the heroin. *Thomas v. State*, 27S02-1703-CR-170. That decision, too, analyzed the facts and looked to the appropriate body of decisional law to resolve Thomas' Fourth Amendment claim. It is also worth pointing out that Thomas was represented by counsel at each and every stage of these proceedings. ECF 6-4; 6-8.

A habeas petitioner had a full and fair opportunity to litigate a Fourth Amendment claim if: (1) he apprised the state court of his Fourth Amendment claim; and (2) the state court thoroughly analyzed the facts and looked to the appropriate body of decisional law to resolve the claim. *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005); *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002). Though Thomas obviously disagrees with the result reached by the Indiana Supreme Court, the opportunity for full and fair litigation of a Fourth Amendment claim "guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003). Unless there has been a "subversion of the hearing process," a federal habeas court "will not examine whether the judge got the decision right." *Id.* at 531.

In his traverse, Thomas has not argued or attempted to demonstrate that there was a subversion of the hearing process in state court. Instead, he focuses on the merits of his Fourth Amendment claim and asks me to reconsider the Indiana Supreme Court's

7

decision, a path that is foreclosed by *Stone*. *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005). Thomas's claim is simply not cognizable on federal habeas review. *See e.g.*, *Turentine v. Miller*, 80 F.3d 222 at 225-226 (7th Cir. 1996) ("We have consistently held that a claim is *Stone*-barred if the petitioner simply argues that the state court made a mistake in applying Fourth Amendment law.").

### III. CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, I must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there is no basis for encouraging Thomas to proceed further. Thus, a certificate of appealability must be denied.

### IV. CONCLUSION

ACCORDINGLY, Will Thomas's habeas petition (ECF 1) is DISMISSED and a certificate of appealability is DENIED.

SO ORDERED on February 1, 2019.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT